589 F.Supp. 743 (1984)
Homer R. SWARTZ, Plaintiff,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Defendant.
No. 83-2975C(5).
United States District Court, E.D. Missouri, E.D.
July 17, 1984.
*744 George O. Suggs, St. Louis, Mo., for plaintiff.
Robert D. Tucker, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Briefs and exhibits have been submitted by both parties.
The Court, having thoroughly reviewed all materials submitted by the parties, is of the opinion that defendant's motion should be granted. Plaintiff's claim is that he was wrongfully terminated as a result of the merger between defendant (plaintiff's employer) and the Illinois Terminal Railway Company. Specifically, he alleges that his discharge is in violation of the labor protection provisions of the merger agreement. Defendant agrees that plaintiff's claim concerns an employment dispute falling within the context of the provisions of the merger agreement. Defendant further argues that because the dispute springs from the merger order, primary jurisdiction of this matter lies not with this Court, but rather with an arbitration committee under the purview of the Interstate Commerce Commission (ICC). The Court agrees with defendant that this Court lacks subject matter jurisdiction due to plaintiff's failure to exhaust his mandatory arbitration remedy.
Both parties agree that the material facts, as outlined in defendant's motion for summary judgment, are not in dispute, therefore, the Court adopts the following statement of facts as recited in defendant's motion for summary judgment.
"The present controversy arises out of the consolidation of the Illinois Terminal Railway Company ("Illinois Terminal") into the Norfolk and Western Railway company ("Norfolk and Western"). On June 19, 1981, the Interstate Commerce Commission ("Commission") authorized Norfolk and Western to acquire substantially all of the assets of Illinois Terminal. (The order of the Commission is attached hereto as Exhibit A). The purchase was consummated on September 1, 1981. The Commission approved the purchase pursuant to sections 11343 and 11344 of the Interstate Commerce Act, 49 U.S.C. §§ 11343, 11344. Under these sections of the Act, the Commission is given "exclusive and plenary" authority to approve railroad consolidations."
"In its order approving the purchase, the Commission imposed certain conditions on the transaction for the protection of employees of the two railroads as required by section 11347 of the Interstate Commerce Act. Exhibit A, p. 8. Under section 11347, the Commission is obligated to require consolidating railroads to protect employees who are adversely affected by the consolidation it has authorized. The statute provides in part as follows:
"The arrangement and the order approving the transaction must require that the employees of the affected rail carriers will not be in a worse position related to their employment as a result of the transaction during the 4 years following the effective date of the final *745 action of the Commission (or if an employee was employed for a lesser period of time by the carrier before the action became effective, for that lesser period)." 49 U.S.C. § 11347."
"The employee protection conditions that the Commission imposed are known as the New York Dock conditions because they are derived from the Commission's decision in New York Dock Ry. Control-Brooklyn Eastern Dist., 360 I.C.C. 60 (1979). Under these conditions, any employee who is affected by a `transaction' made pursuant to the Commission order approving the purchase receives a compensation guarantee for a period of six years and other benefits. The benefits apply to `displaced' and `dismissed' employees as defined by the conditions." "The New York Dock conditions also provide, in article I, section 11, for the arbitration of `any dispute' concerning the interpretation, application or enforcement of its provisions. The text of the article is in part as follows:
"11. Arbitration of disputes  (a) In the event the railroad and its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement of any provision of this appendix, except section 4 and 12 of this article I, within 20 days after the dispute arises, it may be referred by either party to an arbitration committee."
* * * * * *
"(c) The decision, by majority vote, of the arbitration committee shall be final, binding, and conclusive and shall be rendered within 45 days after the hearing of the dispute or controversy has been concluded and the record closed."
"By its express terms, this arbitration provision may be invoked by an employee `or' his authorized representative."
Since the parties agree that the dispute in question is a proper subject for arbitration under the merger agreement, the sole issue is whether under the merger agreement, incorporating by reference the New York Dock conditions, arbitration is a mandatory prerequisite to a filing of a civil action whose basis is an alleged violation of the merger agreement (and the ICC order approving the merger). The Court finds it is.
The crux of the parties' arguments is the interpretation of the arbitration provision in Article 1, Section 11 of the New York Dock conditions. Specifically defendant argues that the "may" clause gives to each party the alternatives of arbitrating the claim or abandoning it. Plaintiff argues that the "may" clause gives to each party the alternatives of arbitrating the claim or filing a civil action; if either party chooses arbitration, then arbitration must be pursued.
The prevailing federal labor policy favors arbitration of employer/employee disputes, when the parties have agreed to that method of labor dispute resolution. Moses H. Cone Memorial Hospital v. Mercury Construction, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 581-582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Courts generally construe arbitration clauses liberally so as to resolve any doubts in favor of arbitration. Moses H. Cone Memorial Hospital, 103 S.Ct. at 941-942; see Creson v. Quickprint of America, 558 F.Supp. 984 (D.Mo.1983).
The arbitration provision of the New York Dock conditions contains the phrase "[i]n the event the railroad and its employees or their authorized representatives cannot settle any dispute or controversy ..., it may be referred by either party to an arbitration committee" (emphasis added). Plaintiff believes that the "may" clause provides for optional arbitration, whereas the defendant believes the "may" clause provides for mandatory arbitration.
The circuits that have addressed the issue of interpreting the "may" clause of the arbitration provision of the New York Dock conditions are split in their construction of the phrase. The Sixth Circuit has reasoned *746 that the "may" clause (contained in the arbitration provision of the New York Dock conditions) "was permissive until such time as the union or the appellant [railroad company] invoked arbitration. If either had done so, arbitration would have been required." Nemitz v. Norfolk and Western Railway Co., 436 F.2d 841, 849 (6th C 1971).
However, the Seventh Circuit has reached the opposite conclusion. In a recent decision, the Seventh Circuit analyzed thoroughly the historical development of the phrase, "may be referred by either party to an arbitration committee..." and concluded that "it is evident that the ICC intended the phrase `may be referred by either party to an arbitration committee' to connote mandatory arbitration." Walsh v. U.S., 723 F.2d 570, 574 (7th C 1983). The Walsh Court further reasoned that such an interpretation was not only supported by the ICC's interpretation of its own language but also the United States Supreme Court's interpretation of analogous phraseology. Walsh, at 574 citing Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co., 353 U.S. 30, 34, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957) and Brotherhood of Locomotive Engineers v. Louisville and Nashville Railroad Co., 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963).
The Eighth Circuit has not directly addressed this issue in regards to the New York Dock conditions but has interpreted analogous "may" clauses in collective bargaining agreements, especially those involving railroads. Sorensen v. Chicago and Northwestern Transportation Co., 627 F.2d 136 (8th C 1980), aff'g 476 F.Supp. 1125 (D.Neb.1979). The Nebraska district court distinguished Nemitz on its facts and concluded that the arbitration provisions of the ICC merger order are mandatory. Sorensen, 476 F.Supp. at 1133. The Eighth Circuit affirmed the district court's ruling but chose not to express an opinion as to whether arbitration was or was not mandatory because the parties had chosen to arbitrate. Sorensen, 627 F.2d at 138.
Even though the Eighth Circuit has not interpreted the "may" clause in the context of the New York Dock conditions, it has interpreted similar, if not identical, arbitration clauses. The chosen construction has been that the purpose of the "may" language is to give the aggrieved party a choice  arbitration or abandonment of the claim. Bonnot v. Congress of Independent Unions Local # 14, 331 F.2d 355, 359 (8th C 1964). As the Eighth Circuit has affirmed a lower court decision which distinguishes Nemitz and furthermore adopts the same interpretation of the "may" clause as does the Seventh Circuit in regards to arbitration provisions of collective bargaining agreements, this Court finds no compelling reason to believe that this circuit would not continue to adopt the same interpretation as has the Seventh Circuit in regards to merger agreement. As federal labor policy favors arbitration and the Eighth Circuit has supported such a policy, this Court finds that as a matter of law, there is no dispute that the merger agreement, as approved by the ICC, mandates arbitration between these parties before seeking redress in federal court.