**Dana R. BOND, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant.**

**No. CV. 84–0–36.**

United States District Court, D. Nebraska.

Nov. 16, 1984.

Thomas R. Wolff, Omaha, Neb., for plaintiff.

Barbara Zandbergen, Omaha, Neb., for defendant.

### MEMORANDUM OPINION

SCHATZ, District Judge.

This matter is before the Court upon defendant Union Pacific Railroad's motion to dismiss the amended complaint (Filing No. 14). After review of the pleadings and of the briefs filed in support of and in opposition to defendant's motion to dismiss, and having considered the arguments of counsel raised at the hearing in this matter, the Court concludes that defendant's motion to dismiss is well taken and should be granted.

As alleged in the amended complaint, the facts are these. On October 20, 1982, the Interstate Commerce Commission issued an order approving the merger application of defendant with Missouri Pacific and Western Pacific Railroad Companies. As relevant herein, the order of the Commission specifically set forth a requirement that any employee whose job was eliminated or consolidated by reason of the merger was to be protected by conditions known in the industry as "New York Dock."

As of September 7, 1983, plaintiff had been an employee of the defendant for approximately thirteen years, serving in his final capacity as an assistant controller-accounting operations. On that date, plaintiff was informed by C. Barry Schaefer, Executive Vice President-Law and Finance, that plaintiff's job was being terminated as a result of consolidation within the accounting department brought about by the merger. Plaintiff was further informed that he would receive benefits and salary for a period of eight months.

Plaintiff's amended complaint alleges two causes of action. First, plaintiff alleges that the New York Dock conditions, imposed by the ICC in connection with defendant's merger, entitle plaintiff to payment of salaries and benefits for a period of six years following his termination. Therefore, plaintiff seeks a declaratory judgment directing his entitlement to such salary and benefits. Plaintiff's second cause of action is based upon the theory of breach of implied contract of employment. Specifically, plaintiff alleges that at the time and place of his hiring, defendant impliedly contracted that as long as plaintiff maintained relative efficiency in his job performance, he would retain his job until retirement. In addition, plaintiff alleges that defendant represented to the ICC its plan to institute a procedure whereby any displaced person would be given an opportunity to transfer to another position. Therefore, plaintiff argues that defendant breached its implied promise and its represented procedure in terminating plaintiff.

In regard to its motion to dismiss, defendant makes several arguments. First, defendant alleges that the employment protections of the New York Dock conditions do not apply to the executive position held by plaintiff. Second, and in the alternative, defendant argues that even if the conditions do apply to plaintiff, then such require arbitration of this dispute, and the Court is without subject matter jurisdiction. Accepting the allegations of plaintiff's complaint as true for purposes of resolving the present motion, the Court must assume that plaintiff's employment position, although ranked sixty-third out of approximately 22,750 employment positions, was a position to which the protections of the New York Dock conditions extend.

In reviewing a proposed railroad merger, the Interstate Commerce Commission is directed by 49 U.S.C. § 11347 to require the involved companies to provide for the interests of employees adversely affected by the merger. In meeting this directive with regard to the Union Pacific, Missouri Pacific, and Western Pacific merger, the Commission imposed the New York Dock conditions, so named because they are derived from the Commission's decision in *New York Dock Railway Control-Brooklyn Eastern District Terminal*, 360 ICC 60 (1979), aff'd, 609 F.2d 83 (2d Cir.1979). Under these conditions, protected employees who are displaced or dismissed as the result of a merger or consolidation of railroads continue to receive compensation for a period of six years. However, in Article I, Section 11, the conditions also state as follows:

11. In the event the railroad and its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement of any provision of this appendix ... within 20 days after the dispute arises, *it may be referred by either party to an arbitration committee.* (Emphasis added).

Although plaintiff herein held a non-union, salaried position, Article IV of the condi-

tions similarly provides for arbitration of disputes concerning this type of position:

> Employees of the railroad who are not represented by a labor organization shall be afforded substantially the same levels of protection as are afforded to members of labor organizations under these terms and conditions.
>
> In the event any dispute or controversy arises between the railroad and an employee not represented by a labor organization with respect to the interpretation, application or enforcement of any provision hereof which cannot be settled by the parties within 30 days after the dispute arises, *either party may refer the dispute to arbitration.* (Emphasis added).

Defendant argues that, even if the New York Dock conditions apply to plaintiff, the "may" clause mandates arbitration as the proper forum for resolving disputes. Plaintiff, however, argues that the "may" clause provides alternatives of either arbitration or redress to court.

Although use of the word "may" ordinarily connotes discretion, the ICC's own use of the word in the context of the phrase "may be referred by either party to an arbitration committee" and the holdings of courts which have analyzed this phrase and phrases closely analogous, require an opposite conclusion. In 1944, the Commission first used the "may" phrase in Section 8 of what became known as the "Oklahoma" conditions. *See, Oklahoma Railway Company Trustees Abandonment of Operation,* 257 I.C.C. 177, 200 (1944). Commenting on that phrase, the ICC has stated:

> In our opinion, fairness and equity require adoption * * * of the condition * * with respect to arbitration, which will make mandatory the submission to binding arbitration of disputes not settled by agreement between the carrier and the employee.

*Southern Railway Company-Control-Central of Georgia Railway Company,* 317 I.C.C. 557, 566 (1962) *modified,* 317 I.C.C. 729 (1963).

In addition, recent court decisions interpreting the New York Dock conditions support the position that arbitration of disputes is mandatory. In *Walsh v. United States,* 723 F.2d 570 (7th Cir.1983), the Seventh Circuit, after analyzing the Commission's own assessment of the meaning of the "may" phrase in its *Southern Railway* decision, concluded that the ICC intended the phrase to connote mandatory arbitration. In addition, the Court was persuaded by a United States Supreme Court interpretation requiring arbitration under a similar phrase of the Railway Labor Act. 723 F.2d at 574, *citing Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.,* 353 U.S. 30, 34, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). As a result, the Seventh Circuit concluded that the phrase "may be referred by either party to an arbitration committee" within Article I of the New York Dock conditions, imposes mandatory arbitration of disputes.

Although the Eighth Circuit Court of Appeals has not addressed this particular phrase of the New York Dock conditions, at least one United States District Court within this Circuit reads the phrase to mandate arbitration. In *Swartz v. Norfolk and Western Railway Co.,* 589 F.Supp. 743 (E.D.Mo.1984), the Court noted that the Eighth Circuit has interpreted analogous clauses in collective bargaining agreements to require arbitration. *See Sorensen v. Chicago and North Western Transportation Co.,* 627 F.2d 136 (8th Cir.1980), *aff'g,* 476 F.Supp. 1125 (D.Neb.1979). Furthermore, the district court found no compelling reason to doubt that the Eighth Circuit would not follow the Seventh Circuit's *Walsh* decision. Accordingly, the Court held that arbitration of disputes is mandatory under the New York Dock conditions.

■ This Court is similarly persuaded by the well-reasoned approach taken in the *Walsh* and *Swartz* decisions. Plaintiff herein claims that his position was eliminated as a direct result of the merger of defendant and two other railroads. Since, under New York Dock, arbitration of plaintiff's employment dispute is mandatory,

and plaintiff has not pursued arbitration, this Court finds that, as a matter of law, it has no subject matter jurisdiction over plaintiff's first cause of action. Furthermore, since plaintiff's second cause of action is premised on breach of implied contract and arises under state law, the Court declines to assume jurisdiction over this pendent claim. *See, Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir.1980). Accordingly, a separate order in accordance with this memorandum opinion will be entered this date granting defendant's motion to dismiss the amended complaint.