Terry J. ATKINSON, et al., Plaintiffs,

v.

UNION PACIFIC RAILROAD COMPANY, and Missouri Pacific Railroad Company, Defendants.

Civ. A. No. 85–2224–S.

United States District Court,
D. Kansas.

Nov. 12, 1985.

J.D. Lysaught, Mark D. Hinderks, Charles O. Thomas, Weeks, Thomas & Lysaught, Kansas City, Kan., for plaintiffs.

Brian J. Finucane, Leonard Singer, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Joel L. Norton, Douglas C. McKenna, Olathe, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment on the basis that the court lacks subject matter jurisdiction over the claims alleged in the complaint. Defendants contend that the claims alleged in the complaint must be resolved through arbitration procedures established by the Interstate Commerce Commission [hereinafter ICC] pursuant to 49 U.S.C. § 11347. In opposition, plaintiffs cite *Norfolk & Western Railroad Co. v. Nemitz,* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971), contending that the United States Supreme Court has conferred jurisdiction on the district court to hear such claims.

The uncontroverted facts are as follows.

1. On September 15, 1980, pursuant to 49 U.S.C. §§ 11343 and 11344, the Union Pacific Corporation [hereinafter UPC] and Missouri Pacific Corporation [hereinafter MPC] jointly filed an application with the ICC seeking authorization for UPC to acquire control over MPC and Western Railroad Company [hereinafter WP].

2. On October 20, 1982, the ICC approved the joint application and UPC's acquisition was completed December 22, 1982.

3. Section 11347, Title 49, United States Code (1982), provides:

When a rail carrier is involved in a transaction for which approval is sought under sections 11344 and 11345 or section 11346 of this title, the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interest of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 565 of title 45. Notwithstanding this subtitle, the arrangement may be made by the rail carrier and the authorized representative of its employees. The arrangement and the order approving the transaction must require that the employees of the affected rail carrier will not be in a worse position related to their employment as a result of the transaction during the 4 years following the effective date of the final action of the Commission ...

4. Pursuant to 49 U.S.C. § 11347, the ICC imposed certain labor protective conditions known as the *New York Dock* conditions.

5. Each plaintiff, except Cline R. Crownover, alleges that he was furloughed by UP from a carman position prior to the consolidation of UP and MP. Cline Crownover contends he was furloughed after consolidation, due to the consolidation. Plaintiffs each allege that, had it not been for the acquisition, he would have been recalled and returned to work as a carman. Plaintiffs allege as a result each is entitled to benefits in the form of monies which he would have earned during that time as provided for in the *New York Dock* conditions.

6. The procedures under Article I, Section 4, of the *New York Dock* conditions provides that each railroad contemplating a transaction which may cause displacement or dismissal of employees give proper written notice of the transaction to its employees.

7. At the request of any interested party, negotiations are to be held for the purpose of reaching an agreement with respect to application of the *New York Dock* conditions. If the parties are unable to agree, either party may submit the issues to arbitration. A neutral referee shall render a decision after holding a hearing. The

referee's decision shall be final, binding and conclusive.

8. Further, Article I, Section 11, of the *New York Dock* conditions provides that if any of the parties have disputes regarding the "interpretation, application or enforcement" of the labor protective conditions other than in Article I, Sections 4 and 12, such shall be referred to an arbitration committee. A decision of the arbitration committee shall be final, binding and conclusive.

To rule favorably on a motion for summary judgment, the court must first determine that the matters considered in connection with the motion disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.*, 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976). A motion under Rule 56 will be denied unless the movant demonstrates beyond doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). However, once a summary judgment motion has been properly supported, the opposing party may not rest on the allegations of the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.), *cert. denied* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). A party with evidence tending to create a factual issue must present that evidence to the trial judge or

summary judgment is proper. *Otteson v. United States*, 622 F.2d 516, 520 (10th Cir. 1980).

The issue presently before the court is whether a dispute regarding the eligibility of benefits for furloughed employees must be submitted to arbitration. Plaintiffs rely almost exclusively on the United States Supreme Court's decision in *Norfolk & Western Railroad Co. v. Nemitz, supra*, for their position that the court does have jurisdiction to hear their causes of action. The court is of the opinion, however, that the decision in *Nemitz* and its underlying facts can be distinguished from the issue at hand. In *Nemitz*, the carrier and union entered into an agreement in 1968 which pre-dated the ICC merger order. The merger order incorporated that 1968 agreement as part of its terms. Later the parties entered into an agreement which restricted the rights of the 1968 agreement. Clearly, the *Nemitz* case did not involve interpretation of the *New York Dock* conditions as it does in the instant case. See *Sorensen v. Chicago & North Western Transportation Co.*, 476 F.Supp. 1125, 1131–32 (D.Neb.1979).

In *Nemitz*, the court was not so much resolving a dispute with regard to the interpretation, application or enforcement of the *New York Dock* conditions; rather, the court sought to determine whether a post-consolidation agreement abrogated the employees' rights and the standard of compensation as imposed by the ICC. In the instant case, plaintiffs seek the determination whether they are eligible for the ICC imposed benefits and whether they were discharged employees due to the acquisition. The court finds decisions such as *S.A. Moran v. Union Pacific R.R.*, No. 85–0432 (D.Neb., *unpublished*, 7/03/85), and *Bond v. Union Pacific Railroad Co.*, 601 F.Supp. 329 (D.Neb.1984), more applicable to the case at hand. In *Moran*, the plaintiffs alleged that defendants failed to comply with Article I, Section 4, of the *New York Dock* conditions by failing to give

notice and have negotiations. While those facts are not directly analogous to the facts at issue here, the court's interpretation of Article I, Sections 4 and 11, of the *New York Dock* conditions are persuasive. The court quotes the statutory language of Article I, Sections 4 and 11, and interprets the language of Section 11 to mandate arbitration for all disputes under the *New York Dock* conditions not exempted by that action. Slip Op. at 3–4. The court recognized that while Section 4 is excepted from the mandatory arbitration of Section 11, it provides its own procedures for arbitration of disputes. *Id.* at 4. The court found that "[r]ead as a whole, the *New York Dock* conditions contemplate arbitration of employment related disputes." *Id.*

In addition to this decision, recent court decisions interpreting the *New York Dock* conditions hold that arbitration of a dispute is mandatory. *Bond v. Union Pacific Railroad Co., supra,* 601 F.Supp. at 331, citing *Walsh v. United States,* 723 F.2d 570 (7th Cir.1983). In *Bond,* the plaintiff alleged that his position was eliminated as a result of a merger of two railroads. The court held that because the *New York Dock* conditions mandate arbitration of plaintiff's employment dispute and plaintiff had not pursued arbitration, the court had no subject matter jurisdiction over plaintiff's cause of action.

In *McKeon v. Toledo, Peoria & Western Railroad Co.,* 595 F.Supp. 766, 770 (C.D.Ill. 1984), the court interpreted earlier Seventh Circuit Court of Appeals' decisions addressing the *New York Dock* conditions to read that initial factual disputes regarding alleged violations must be submitted to arbitration. Only after arbitration is the ICC required to determine whether protective conditions have been violated, and only if there is an appeal from that ICC decision should an *appellate* court have jurisdiction to review. *Id.* at 769–70 (emphasis added). See also *Swartz v. Norfolk & Western Railway Co.,* 589 F.Supp. 743, 746 (E.D. Mo.1984) [merger agreement, as approved by the ICC, mandates arbitration between the parties before seeking redress in federal court].

Further support for the proposition that arbitration is mandated by the *New York Dock* condition is found in decisions which have held that the language "may be referred by either party to an arbitration committee" as stated in Article I, Section 11 of the *New York Dock* conditions. *Swartz, supra,* at 744–45. See, *e.g., Southern Railway Company-Control-Central of Georgia Railway Co.,* 317 I.C.C. 557, 566 (1962). *Accord. New York Dock Railway v. U.S.,* 609 F.2d 83, 87–89 (2nd Cir.1979).

Defendants also contend that, regardless, the carrier's position relative to the plaintiffs' claims have been effectively denied by Arbitrator Fredenberger as a result of an arbitration hearing held on July 17, 1985. The court finds that it need not address itself to the merits of this contention. The court finds that plaintiffs' claims for benefits must be resolved in arbitration under the ICC order.

Based on the application of the case law cited above to the facts and issues pled, the court finds that defendants' motion to dismiss for lack of subject matter jurisdiction should be granted.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment due to lack of the court's subject matter jurisdiction is hereby granted.