**Allen B. ATKINS, et al., Plaintiffs-Appellants,**

v.

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, et al., Defendants-Appellees.**

Nos. 86–5570 to 86–5575.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1987.

Decided May 27, 1987.

Stanley M. Chesley, argued, Kenneth G. Hawley, Waite, Schneider, Bayless, Chesley, Cincinnati, Ohio, Phillip B. Allen, for plaintiffs-appellants.

Gerald F. Dusing, argued, Adams, Brooking, Stepner, Woltermann and Dusing, Florence, Ky., for defendants-appellees.

Before MERRITT and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Appellants challenge the district court's judgment dismissing their complaints without prejudice for failure to exhaust the administrative remedy of arbitration. Appellants contend that arbitration under the pertinent agreement is merely permissive, rather than mandatory, and therefore they cannot be required to arbitrate their claims before bringing a federal action. In the alternative, appellants argue that even if arbitration is mandatory, they should be relieved of any exhaustion requirement because of futility. For the reasons which follow, we affirm the district court.

**I.**

In September of 1980, the Interstate Commerce Commission (ICC) approved the acquisition by appellee CSX Corporation of various rail carrier subsidiaries of Chessie Systems, Inc. and Seaboard Coastline Industries, Inc. Acting pursuant to 49 U.S.C. § 11347, the ICC imposed certain employee protection provisions known as the "New York Dock Conditions" as a condition of its approval of the merger. Those conditions are set forth in *New York Dock Railway— Control—Brooklyn Eastern District Terminal*, 360 I.C.C. 60, *aff'd sub nom. New York Dock Railway v. United States*, 609 F.2d 83 (2d Cir.1979). The New York Dock Conditions provide certain protections for railway employees who are either "displaced" or "dismissed" as a result of a transaction between railroads such as the CSX merger. Article I, § 1(b) of the Dock Conditions defines a displaced employee as one who, as a result of a transaction, "is placed in a worse position with respect to his compensation and rules governing his working conditions." Article I, § 1(c) defines a dismissed employee as one who "is deprived of employment with the railroad because of the abolition of his position or the loss thereof as the result of the exercise of seniority rights by an employee whose position is abolished."

Subsequent to the merger, the Seaboard Coastline Railroad and appellee Louisville & Nashville Railroad Company merged to form appellee Seaboard Systems Railroad.

On November 9, 1983, Seaboard Systems and the Baltimore & Ohio Railroad Company, two rail carriers controlled by CSX, served notice pursuant to Article I, § 4 of the Dock Conditions, that they intended to coordinate and consolidate certain operations. The consolidating actions which were taken had an impact on employment at a work area known as Decoursey Yard.

Beginning in June of 1984, appellants, who are present or former employees of the appellees, filed a total of six complaints in district court. The actions were brought pursuant to 49 U.S.C. § 11705(a) and (b)(2) to enforce the ICC's order imposing the Dock Conditions and to recover damages for violations of that order. Appellants claimed that they were displaced or dismissed as defined in the Dock Conditions as a result of consolidating actions taken in furtherance of the CSX merger, and claimed entitlement to just compensation for their displacement or dismissal. Appellants asserted that the defending rail carriers had improperly taken the position that the appellants were displaced or dismissed solely as a result of a decline in business, not as a result of the CSX merger.[1] Appellants also alleged that their unions had refused to initiate arbitration proceedings and that their employers had rejected efforts to arbitrate, thereby leaving appellants with no available administrative remedies. According to appellants, further attempts to utilize the administrative remedies provided by the Dock Conditions "would be futile."

The rail carrier defendants moved to dismiss the complaints on the ground that appellants had failed to exhaust administrative remedies. Defendants urged that Article I, § 11 of the Dock Conditions is a mandatory arbitration provision under which employees asserting contract grievances must first pursue resolution through the arbitration process before bringing action in federal court. Failure to pursue arbitration, according to defendants, constitutes a failure to exhaust administrative remedies and thereby precludes filing a

federal action. In addition to their motion to dismiss, defendants filed a supplemental affidavit indicating that several of the plaintiffs had filed claims for displacement benefits on their own behalf which were pending in, but were not yet resolved by, arbitration.

The district court held an oral hearing on the motion to dismiss which focused on the status of pending arbitration involving any of the named plaintiffs and the effect of the availability of arbitration, if indeed it was available. At the close of the hearing, the district court granted the plaintiffs permission to perform limited discovery concerning the arbitration proceedings, and permission to file a supplemental brief based on that discovery.

Plaintiffs subsequently filed a supplemental memorandum opposing dismissal and providing a factual summary of the pending arbitration proceedings. The memorandum stated that "only fifteen of the ninety-six Plaintiffs in these companion lawsuits have actually managed to have arbitration of their New York Dock claims invoked, and even arbitration in these fifteen Plaintiffs has proven futile. It took those fifteen Plaintiffs years to get to arbitration, and once in arbitration, the decisions have never been rendered." The defendants responded by filing a supplemental affidavit updating the progress of the ongoing arbitration proceedings. Attached to the affidavit were several decisions rendered pursuant to § 11 of the Dock Conditions which involved claims of fifteen of the named plaintiffs.

In July of 1985, the district court referred the case to a magistrate, who issued a Report and Recommendation after hearing oral argument. The magistrate interpreted § 11 of the Dock Conditions as providing for arbitration as a mandatory, not merely permissive, form of dispute resolution. Accordingly, the magistrate recommended that the motions to dismiss be

---

**1.** Displacement or dismissal due to a business decline is not compensable under the Dock Conditions.

granted on the ground of failure to exhaust administrative remedies.

After receiving timely objections to the magistrate's findings, the district court adopted the Report and Recommendation, granted the defendants' motion to dismiss for failure to exhaust administrative remedies, and dismissed the plaintiffs' complaints without prejudice. Thus, the court contemplated that arbitration, and subsequent federal review thereof, may still be available. Timely appeals were taken from the respective dismissal orders in each of the cases, which this court consolidated for review on appeal.

## II.

As noted above, this consolidated appeal arises from the district court's grant of the defendants' motions to dismiss, and it is apparent that the cases were dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The ICC ordered adherence to the New York Dock Conditions pursuant to 49 U.S.C. § 11347 as a condition of its approval of the defendants' merger. The defendants in their motion to dismiss contended that the arbitration provision of the Dock Conditions was mandatory and therefore precluded appellants from bringing a federal claim under § 11347 for an alleged violation of the Dock Conditions without first pursuing arbitration. Thus, when the district court concluded that arbitration was mandatory, and that the plaintiffs had failed to exhaust that mandatory remedy, it necessarily found that it was without jurisdiction to hear the claim that the Dock Conditions had been violated. *See, e.g., Atkinson v. Union Pac. R.R.*, 628 F.Supp. 1117, 1119–20 (D.Kan.1985) (because dispute had to be submitted to arbitration, district court lacked subject matter jurisdiction over action); *Bond v. Union Pac. R.R.*, 601 F.Supp. 329, 331–32 (D.Neb. 1984) (same). We therefore reject the defendants' contention on appeal that since materials outside of the pleadings were submitted to the district court, the district court's judgment was necessarily one of summary judgment on the merits with res judicata effect. While a motion to dismiss can certainly be treated by a district court as a motion for summary judgment when supplemental materials are filed, *see Mozert v. Hawkins County Pub. Schools*, 765 F.2d 75, 78 (6th Cir.1985), the court in the instant case clearly did not do so. The court succinctly stated that it was granting the defendants' motion to dismiss and was dismissing the plaintiffs' complaints without prejudice. This shows no contemplation of entering a summary judgment in favor of the defendants.

### A.

Resolution of this case depends on our interpretation of the arbitration provision contained in Article I, § 11 of the New York Dock Conditions, which states in pertinent part:

Arbitration of disputes—(a) *In the event the railroad and its employee or their authorized representatives cannot settle any dispute* or controversy with respect to the interpretation, application or enforcement of any provision of this appendix, except section 4 and 12 of this article I, within 20 days after the dispute arises, *it may be referred by either party to an arbitration committee.*

(Emphasis added). The focus of the instant controversy is on the meaning of the phrase "may be referred" to arbitration. Appellants contend that because the word "may" is used, the phrase clearly contemplates arbitration as being a permissive form of dispute resolution. Appellees urge that the district court correctly concluded, in a manner similar to other courts which have addressed this identical issue, that the phrase indicates mandatory arbitration.

A number of courts over the years have analyzed similar arbitration phrases utilizing the word "may" and have generally recognized that the use of that word does not necessarily mean that arbitration is permissive. *See Nemitz v. Norfolk & W. Ry. Co.*, 436 F.2d 841, 849 (6th Cir.) (citing cases), *aff'd*, 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971). In fact, every federal court which has interpreted § 11 of the New York Dock Conditions has concluded that arbitration is mandatory under that

provision. The most detailed analysis is found in *Walsh v. United States*, 723 F.2d 570 (7th Cir.1983). There, the court examined the intent of the ICC in using the word "may," since the ICC had drafted the arbitration provision pursuant to congressional authority. Noting that the arbitration clause found in the New York Dock Conditions was traceable to an identical clause of the "Oklahoma Conditions," [2] the court looked to the following comments made by the ICC concerning the Oklahoma arbitration clause:

> "[P]aragraph 8 of the *Oklahoma* conditions ... contemplates arbitration of disputes with respect to claims arising by virtue of certain of the conditions.
>
> \*  \*  \*  \*  \*  \*
>
> In our opinion, fairness and equity require adoption ... of the condition ... with respect to arbitration, which will make *mandatory* the submission to binding arbitration of disputes not settled by agreement between the carrier and employee."

*Walsh*, 723 F.2d at 574 (quoting *Southern Ry. Co.—Control—Central of Georgia Ry. Co.*, 317 I.C.C. 557, 566 (1962)). From these comments, the court concluded that it was "evident that the ICC intended the phrase 'may be referred by either party to an arbitration committee' to connote mandatory arbitration." *Id.*

The Eighth Circuit in *Hoffman v. Missouri Pacific Railroad*, 806 F.2d 800, 801 (8th Cir.1986), expressly followed *Walsh* in likewise holding that "arbitration is mandatory under section 11 of the *New York Dock* conditions." Although *Walsh* appears to be the only other Circuit decision interpreting § 11 of the New York Dock Conditions, multiple district courts have interpreted it and concluded that it provides for mandatory arbitration. *See, e.g., At-*

*kinson v. Union Pac. R.R.*, 628 F.Supp. 1117, 1119–20 (D.Kan.1985); *Bond v. Union Pac. R.R.*, 601 F.Supp. 329, 331–32 (D.Neb.1984); *McKeon v. Toledo, P. & W. R.R.*, 595 F.Supp. 766, 768–70 (C.D.Ill. 1984); *Swartz v. Norfolk & W. Ry.*, 589 F.Supp. 743, 745–46 (E.D.Mo.1984).

Appellants argue that this court's prior statements in *Nemitz v. Norfolk & Western Railway Co.*, 436 F.2d 841 (6th Cir.), *aff'd*, 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971), indicate that we should not follow the cases unanimously interpreting § 11 as providing for mandatory arbitration. *Nemitz* involved an arbitration clause similar to the instant one which provided that any dispute or controversy arising between the employer and the union "may be referred by either party to an arbitration committee for consideration and determination." 436 F.2d at 843 n. 1. Upon reviewing Sixth Circuit precedent, namely *Batts v. Louisville & Nashville Railroad Co.*, 316 F.2d 22 (6th Cir.1963), and decisions from other circuits, the panel concluded that the arbitration clause was mandatory only to the extent that if one party requested arbitration, the other was required to arbitrate; if neither party invoked arbitration, it remained permissive. This holding was summarized as follows:

> We are persuaded that the arbitration clause now before us was permissive until such time as the union or the appellant invoked arbitration. If either had done so, arbitration would have been required. As neither the union nor the appellant invoked arbitration, the clause remained permissive and the appellees may not be said to have failed to have exhausted their administrative remedy by virtue of the fact that their grievances were not submitted to arbitration.

---

**2.** Section 8 of the Oklahoma Conditions provided:

> In the event that any dispute or controversy arises with respect to the protection afforded by the foregoing conditions Nos. 4, 5, 6, and 7, which cannot be settled by the carriers and the employee, or his authorized representatives, within 30 days after the controversy arises, *it may be referred, by either party, to an*

*arbitration committee* for consideration and determination, the formation of which committee, its duties, procedures, expenses, et cetera, shall be agreed upon by the carriers and the employee, or his duly authorized representative.

*Oklahoma Ry. Co. Trustees Abandonment of Operation*, 257 I.C.C. 177, 200 (1944) (emphasis added); *see Walsh*, 723 F.2d at 574 n. 2.

*Id.* at 849. *Nemitz* went on to hold, in the alternative, that even if arbitration was completely mandatory, the grieving employees had fulfilled any exhaustion requirement by showing the futility of proceeding further with the arbitration procedure. Under the arbitration provision, the power to request arbitration rested exclusively with the union or the employer, and not with the individual employees. Therefore, since the employees had sought to have arbitration invoked by their union but the union had refused their requests, the individual employees "had gone as far as they could have gone within the grievance settlement machinery," thereby satisfying any exhaustion requirement. *Id.* at 849.[3]

The Supreme Court affirmed the *Nemitz* decision at 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971). However, the Court did not reach, nor did it address in any manner, the issue of whether arbitration was merely permissive under the arbitration clause.

■ Although the arbitration provision we interpreted in *Nemitz* was similar to the one at issue herein, *Nemitz* did not involve the New York Dock Conditions and therefore we have expressed no opinion as to the meaning of § 11 of the Dock Conditions. Furthermore, because *Nemitz* did not involve arbitration under § 11, that decision was rendered without the benefit of the ICC's interpretation of § 11 which we believe is significant in evaluating the meaning of that provision. As observed in *Walsh*, "it is evident that the ICC intended the phrase 'may be referred by either party to an arbitration committee' to connote mandatory arbitration." 723 F.2d at 574. We agree with this statement and the line of federal decisions holding that § 11 provides for arbitration as a mandatory form of dispute resolution. We are unpersuaded that *Nemitz* requires us to depart from those cases which, we believe, are consistent with the strong federal policy favoring arbitration when agreed to by the parties. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80

S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960). Accordingly, we uphold the district court's decision that arbitration pursuant to § 11 of the New York Dock Conditions is mandatory.

**B.**

Appellants argue that even if arbitration is mandatory under § 11, they either have fulfilled any requirement that they exhaust their remedy of arbitration, or they should be excused from the exhaustion requirement. Appellants contend that they fulfilled their obligation to pursue arbitration when they sought to have their unions invoke arbitration but the unions refused. They also claim that even though some of them initiated arbitration proceedings on their own behalf, which they are expressly permitted to do under § 11, the arbitration process has proceeded so slowly that they have effectively been precluded from resolving their claims. Under both arguments, appellants assert that pursuing matters further would be futile.

■ It is clear that when arbitration is mandatory, an employee must at least attempt to use and exhaust the contractual grievance procedure before seeking judicial review of his claim. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, there are several exceptions to the exhaustion requirement, as the Supreme Court first recognized in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca* the Court specified at least two situations in which suit could be brought by an employee despite failing to fully exhaust contractual remedies: (1) when the union has the "sole power" under the contract to invoke the upper level grievance procedures and yet prevents an employee from exhausting contractual remedies by wrongfully refusing to process the employee's grievance in violation of its duty of fair representation; and (2) when the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract. 386 U.S. at 185–86, 87 S.Ct. at

---

**3.** Although not relevant to the first issue raised by the instant appellants, this alternative hold-

ing of *Nemitz* is significant with respect to the second issue discussed below.

914. The Supreme Court recognized yet a third exception from the exhaustion requirement in *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). That exception arises "where the effort to proceed formally with contractual or administrative remedies would be wholly futile." *Id.* at 330, 89 S.Ct. at 551. The Court found this third exception to be applicable in the case before it since the plaintiffs had alleged racial discrimination on the part of the grievance decisionmaking body, which prevented fair resolution of their grievances. *Id.* at 330–31, 89 S.Ct. at 551–52.

This court in *Nemitz* relied on the *Glover* futility exception in asserting the alternative ground for its decision—that even if arbitration was mandatory, the employees had fulfilled any exhaustion requirement by seeking to invoke arbitration only to have their union refuse to pursue that remedy. The court referred to the futility doctrine recognized in *Glover* and concluded "that it would have been a futile gesture for the [employees] to have attempted to proceed further with the arbitration procedure." 436 F.2d at 850. The appellants in the instant case rely on *Nemitz* as support for their argument that they, too, have met any exhaustion requirement.

■ The circumstances of the instant case do not give rise to an application of the futility exception. First, the present situation is readily distinguishable from that in *Nemitz* in that a refusal by appellants' unions to request arbitration did not preclude appellants from initiating the arbitration process on their own behalf. In *Nemitz*, as in *Vaca*, the sole power to invoke arbitration on behalf of the employees was vested with the union. Here, however, appellants themselves are entitled under the express language of § 11 to pursue on their own the full extent of the grievance procedure. *See Graf v. Elgin, Joliet & E. Ry. Co.*, 697 F.2d 771, 780 (7th Cir.1983). Section 11 provides that if "the railroad *and* its employees *or* their authorized representatives cannot settle any dispute ... [concerning the Dock Conditions] it may be referred by *either* party to an arbitration

committee." (Emphasis added). Since an employee can proceed to arbitration without union representation, the unions' refusal to invoke the arbitration remedy will not alone constitute exhaustion or indicate that further attempts to invoke arbitration would have been futile. *See Hoffman*, 806 F.2d at 801.

Further, we are unpersuaded that seeking arbitration individually would have been futile. It is undisputed that some of the appellants initiated the arbitration process on their own, which culminated in final arbitration decisions. Thus, not only did appellants have the power to invoke arbitration, but they were not precluded from exercising that power in a manner indicative of futility. The mere fact that the arbitration decisions were adverse to the positions taken by appellants does not indicate that arbitration is futile as that term was used in *Glover*. There is no showing here that any arbitration panel was "tainted" as there was in *Glover*. To the contrary, the arbitration decisions indicate that the arbitration panels have been composed of one member selected by the employer, one member selected by the union or affected employee, and one neutral arbitrator agreed to by both parties or provided by the National Mediation Board. This is provided for by the terms of § 11 of the New York Dock Conditions.

In sum, the instant case differs significantly from *Vaca*, *Glover*, and *Nemitz*, since the sole power to invoke arbitration under § 11 does not rest with the union and since the arbitration decisionmaking process has not been shown to be tainted. We therefore reject appellants' arguments that they satisfied any exhaustion requirement by requesting their unions to pursue their grievances, and that they fall within the *Glover* futility exception to the exhaustion requirement.

Accordingly, we AFFIRM the district court's dismissal of appellants' complaints for failure to exhaust their administrative remedy of arbitration.

MERRITT, Circuit Judge, concurring.

I concur in the Court's opinion and find no fault with its reasoning. I write sepa-

rately to point out that our decision does not purport to rule on any right the plaintiffs may have to request the District Court to refer the case to arbitration pursuant to the New York dock conditions and applicable federal law. Although the question of such a referral was discussed at oral argument, the court below has not had an opportunity to rule on this issue. In light of the fact that we have no decision to review from the court below on this issue, it would be inappropriate for this Court to address and decide the question of referral to arbitration.