Larry E. COLLINS; John K. Grauberger; Phil J. Chapple, Plaintiffs-Appellants,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Defendant-Appellee.

No. 87-4141.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided Feb. 2, 1989.

Joseph P. Hennessey, Hennessey Law Office, Billings, Mont., for plaintiffs-appellants.

K. Kent Koolen and T. Thomas Singer, Moulton, Bellingham, Longo & Mather, P.C., Billings, Mont., for defendant-appellee.

Before FLETCHER, BOOCHEVER and TROTT, Circuit Judges.

PER CURIAM:

Plaintiffs appeal the district court's order dismissing their case for lack of jurisdiction due to failure to exhaust administrative remedies. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291, and we affirm.

In 1980, Burlington Northern Railroad Company (BN) merged with the St. Louis-San Francisco Railway. This merger, commonly referred to as the "Frisco Merger," was approved by the Interstate Commerce Commission (ICC) pursuant to 49 U.S.C. § 11347.[1] In approving this merger, the

1. 49 U.S.C. § 11347 provides in pertinent part:
   When a rail carrier is involved in a transaction for which approval is sought ... the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interests of employees who are affected by the transaction as the terms imposed under this section.... The arrangement and the order approving the transaction must require that the employees of the affected rail

ICC imposed certain employee protective benefits, commonly known as the *"New York Dock"* conditions, *see New York Dock Railway–Control–Brooklyn Eastern District Terminal*, 360 I.C.C. 60, *affirmed* 609 F.2d 83 (2nd Cir.1979), for those affected by the merger who had not entered into a protective agreement with BN prior to its consummation. In effect, these protective benefits cushion the economic consequences to employees of layoffs caused by consolidation of railroads.

Plaintiffs are former employees of BN who, beginning in 1982, were furloughed from their jobs as carmen at BN's car repair facility in Laurel, Montana. As members of the Brotherhood of Railway Carmen, which did not enter into a separate merger agreement for employee protections prior to the Frisco Merger, plaintiffs directed requests for *New York Dock* benefits to their union after being furloughed. The requests were denied on the ground that the layoffs were not caused by the Frisco Merger, and the union declined to intercede on plaintiffs' behalf. Plaintiffs then made the same request of BN, but for some reason plaintiffs did not take this step until almost three years had gone by after they were turned down by their union. In their request to BN, plaintiffs also mentioned a willingness to arbitrate. The plaintiffs made no other attempt to initiate arbitration.

In essence, BN gave plaintiffs the cold shoulder, and plaintiffs proceeded directly to court with this lawsuit. Plaintiffs claim that they bypassed arbitration because BN's refusal to acknowledge their tardy communication made arbitration futile.

In this lawsuit, plaintiffs continue to claim their furloughs were caused by the Frisco Merger which, if true, would make them eligible for benefits. BN, however, disputes this allegation, claiming the furloughs were an economic necessity, caused by a decline in business—not the Frisco Merger—and therefore plaintiffs are not eligible for the benefits they seek.

Article I, Section 11(a) of the *New York Dock* conditions provides:

In the event the railroad or its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement of any provision of this appendix ... within 20 days after the dispute arises it *may be referred by either party to an arbitration committee.* On notice in writing served by one party on the other of intent by that party to refer a dispute or controversy to an arbitration committee, each party shall, within 20 days, select one member of the committee and the members thus chosen shall select a neutral member who shall serve as chairman....

(Emphasis added).

■ The fundamental issue in this case created by the dispute over the cause of the furloughs is whether arbitration is mandatory or permissive under this section, an issue of first impression in this circuit. If Article I, Section 11(a) is a mandatory provision, then employees asserting contract grievances and seeking *New York Dock* benefits must pursue resolution through the arbitration process prior to bringing a federal court action.

The district court determined that Section 11(a) imposes mandatory arbitration of disputes, relying on the reasoning of the Eighth Circuit in *Hoffman v. Missouri Pacific R.R.*, 806 F.2d 800, 801 (8th Cir.1986), and the Seventh Circuit in *Walsh v. United States*, 723 F.2d 570, 573–74 (7th Cir.1983). The resolution of this issue on appeal depends upon the interpretation of the language "may be referred by either party to an arbitration committee" contained in § 11(a).

In *Walsh v. United States*, 723 F.2d 570 (7th Cir.1983), the court looked to the intent of the ICC—the drafter of this provision—in its use of the word "may" which in ordinary usage is permissive rather than mandatory. The court noted that § 11 was traceable to an identical clause of the *"Oklahoma* conditions." In referring to

carrier will not be in a worse position related to their employment as a result of the transaction

during the 4 years following the effective date of the final action of the Commission....

the *Oklahoma* conditions, the ICC stated: "In our opinion, fairness and equity require adoption ... of the condition ... with respect to arbitration, which will make *mandatory* the submission to binding arbitration of disputes not settled by agreement between the carrier and employee." *Walsh*, 723 F.2d at 574 (quoting *Southern Ry. Co.—Control—Central of Georgia Ry. Co.*, 317 I.C.C. 557, 566 (1962) (emphasis added)). The Seventh Circuit concluded that these comments make it "evident that the ICC intended [§ 11(a)] to connote mandatory arbitration." *Id.*

The Eighth Circuit expressly followed *Walsh* in *Hoffman v. Missouri Pacific R.R.*, 806 F.2d 800 (8th Cir.1986). In adopting the "well-reasoned" decision of *Walsh*, the court rejected as misplaced plaintiff's reliance on *Nemitz v. Norfolk & Western Ry.*, 436 F.2d 841 (6th Cir.), *aff'd* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971). *Nemitz* involved an arbitration clause which contained language very similar to § 11(a) providing that any dispute or controversy arising between the employer and union "may be referred by either party to an arbitration committee for consideration and determination." 436 F.2d at 843 n. 1. The *Nemitz* court concluded that arbitration was mandatory only to the extent that if one party requested arbitration, the other party was required to arbitrate. Arbitration would remain permissive if neither party invoked arbitration. *Id.* at 849. In *Hoffman*, however, the court concluded *Nemitz* was distinguishable because "*Nemitz* did not involve the *New York Dock* conditions, and in affirming the Sixth Circuit decision, the Supreme Court did not discuss the arbitration clause that was before the circuit court." 806 F.2d at 801. The court in *Hoffman* believed its holding to be in line with the strong federal policy favoring arbitration of labor disputes. *See International Ass'n of Heat & Frost Insulators, Local Union 34 v. General Pipe Covering, Inc.*, 792 F.2d 96, 100 (8th Cir. 1986).

The *Hoffman* court then turned to plaintiff's argument that she was excused from arbitration because her union refused to arbitrate on her behalf. The court found

this argument ignored the clear language of § 11(a): "[I]f the railroad *and* its employees *or* their authorized representatives cannot settle any dispute ... [over] the interpretation, application or enforcement of [the conditions] ..., it may be referred by *either* party to an arbitration committee." *Hoffman*, 806 F.2d at 801 (quoting *New York Dock Ry.*, 360 I.C.C. at 87) (emphasis supplied). The court determined "[u]nder this language, an employee can proceed to arbitration without union representation, and the union fully informed [plaintiff] of her ability to proceed in this matter." *Id.*

The Sixth Circuit determined that arbitration under § 11(a) is mandatory rather than permissive in *Atkins v. Louisville & Nashville R.R.*, 819 F.2d 644 (6th Cir.1987). In reaching this conclusion the court noted that every federal court which has interpreted § 11(a) has decided that arbitration is mandatory. 819 F.2d at 647–48. The court relied upon the reasoning of both the Seventh and Eighth Circuits' in *Walsh* and *Hoffman* and further noted that multiple district courts have interpreted § 11(a) in this manner. *See, e.g., Atkinson v. Union Pac. R.R.*, 628 F.Supp. 1117, 1119–20 (D.Kan.1985); *Bond v. Union Pac. R.R.*, 601 F.Supp. 329, 331–32 (D.Neb.1984); *McKeon v. Toledo, P. & W. R.R.*, 595 F.Supp. 766, 768–70 (C.D.Ill.1984); *Swartz v. Norfolk & Western Ry.*, 589 F.Supp. 743, 745–46 (E.D.Mo.1984).

The *Atkins* court also addressed the issue of whether the obligation to pursue arbitration is satisfied when plaintiffs seek to have their union invoke arbitration but the union refused. The court, as did the court in *Hoffman*, concluded that a union's refusal to invoke the arbitration remedy will not alone constitute exhaustion or indicate the futility of further attempts to invoke arbitration because the employee can proceed under § 11(a) without union representation. 819 F.2d at 650.

We find the reasoning of our fellow circuits persuasive and join in their conclusion that arbitration pursuant to *New York Dock* is mandatory.

■ The district court found that plaintiffs failed to pursue their administrative remedies. The record amply supports this finding. As stated by the district court, the circumstances of this case are not unlike those discussed in *Hoffman*. It does not matter that the union refused to pursue the claim, because plaintiffs may proceed to arbitration without union representation. *Hoffman*, 806 F.2d at 801. Furthermore, this was acknowledged implicitly by plaintiffs in their demand letter.[2] Even though BN did not respond to the letter, this lack of response falls short of showing futility of exhaustion. Because plaintiffs have taken no further affirmative steps to refer the matter to an arbitration committee, plaintiffs have failed to exhaust their mandatory administrative remedies; and the district court correctly determined it lacked jurisdiction to decide plaintiffs' substantive claims. *Wren v. Sletten Construction Co.*, 654 F.2d 529, 535 (9th Cir.1981). The court's decision on this issue is affirmed.

■ On appeal, plaintiffs contend that if arbitration is mandatory, the district court should have entered a stay and ordered the parties to arbitrate under 9 U.S.C. § 3.[3] In their response brief to the district court, plaintiffs requested:

Should the court determine nonetheless that arbitration is mandatory and has not been exhausted, then it should order BN to arbitration, given its history of intractability, and stay the instant proceedings pending the outcome of the arbitration. 9 U.S.C. § 3.

The district court failed to consider whether a stay is appropriate under the circumstances of this case. Accordingly, we remand to the district court for a determination of whether a stay should be entered and an order compelling the parties to arbitration granted.

Although the district court lacks jurisdiction to entertain the plaintiffs' unexhausted substantive claims, in appropriate circumstances, the court does have jurisdiction to compel arbitration. *See, e.g., New Orleans and Northeastern R.R. v. Bozeman*, 312 F.2d 264 (5th Cir.1963) (upholding district court order compelling arbitration under the *"Oklahoma* conditions") *Burlington Northern, Inc. v. American Ry. Supervisors Ass'n*, 503 F.2d 58 (7th Cir.1974) ("when an agreement to arbitrate is one of the protections afforded employees under Section 5(2)(f) of the Interstate Commerce Act, the obligation to arbitrate will be enforced by the courts"), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

The district court's decision that the *New York Dock* conditions require mandatory arbitration and that plaintiffs failed to exhaust this administrative remedy, is AFFIRMED. We REMAND the case to the district court, however, for a determination of whether a stay should have been entered and the parties compelled to arbitration.

---

**2.** In this demand letter, dated February 28, 1985, plaintiffs notified BN that it was their belief that the *New York Dock* conditions had not been met by BN. They stated: "We are willing to go to arbitration in this matter. If we do not hear within 30 days (sic), we will authorize any action necessary to force compliance with the 'Frisco Merger.'"

**3.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.