**AMERICAN TRAIN DISPATCHERS ASSOCIATION, Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents,**

**Burlington Northern, Inc., Intervenor.**

**No. 77–1222.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1978.

Decided May 1, 1978.

hensive testing, "the laminated glass industry possesses the manufacturing technology and

Gordon P. MacDougall, Washington, D. C., for petitioner.

Mark L. Evans, Gen. Counsel, I.C.C., Washington, D. C., for respondents; Robert S. Burk and Frederick W. Read, III, Associate Gen. Counsels, Kenneth G. Caplan, Atty., I.C.C., John J. Powers, III, and Susan J. Atkinson, Attys., Dept. of Justice, Washington, D. C., were on the brief.

Charles H. White, Jr., and Henry F. Rush, Attys., I.C.C., Washington, D. C., entered an appearance for I.C.C.

Carl D. Lawson, Atty., Dept. of Justice, Washington, D. C., entered an appearance for U. S.

Barry McGrath, St. Paul, Minn., for intervenor.

Before WRIGHT, Chief Judge, and LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

testing technique to pass the Commission's impact tests.

LEVENTHAL, Circuit Judge:

This is a petition to review an order of the Interstate Commerce Commission that construes portions of the Interstate Commerce Act dealing with job protection for railroad employees affected by a merger.

In 1967, the Commission approved the so-called "Northern Lines Merger," *Great N.P. & Burlington Lines, Inc. Merger*, 331 I.C.C. 228 (1967). In its order, the Commission imposed certain conditions designed to protect employees of the merged railroads whose job status might be affected by the merger. Section 5(2)(f) of the Interstate Commerce Act, 49 U.S.C. § 5(2)(f), requires the Commission to impose such protective conditions in approving a merger.

Petitioner American Train Dispatchers Association represents nine employees of Burlington Northern (BN), the railroad that resulted from this merger. Of these nine train dispatchers, three were hired by BN subsequent to the merger. The other six were employed as telegraphers at the time of the merger, and were later promoted to dispatchers. The question before us is whether these employees are entitled to enjoy protective conditions imposed by the Commission as a condition of the merger. Its resolution necessarily turns on the meaning of section 5(2)(f) of the Act:

> As a condition of its approval, under this paragraph (2), of any transaction involving a carrier or carriers by railroad subject to the provisions of this part, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this Act, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees.

■ Petitioner urges that the first sentence of this subsection mandates protection for all employees affected by a merger, without limitation as to date of employment or promoted status. Under this reading, the three employees hired after the merger would be entitled to protection; and the six who were promoted after the merger would be protected in their promoted status. Petitioner concedes that the Commission has discretion under § 5(2)(f) in applying the "fair and equitable" standard, but insists that these employees are entitled as a matter of law to some protection, with Commission discretion only as to the degree of protection.[1]

This construction is unwarranted by the language of the statute or its legislative history. It will serve no purpose to review that history in detail, since no part of it bears directly on the question before us. Suffice it to say that Congress, in promulgating this legislation, was clearly concerned with the fact that merger economies would be achieved largely at the expense of displaced labor. That the question of post-merger employees occurred to the legislators at all seems doubtful.

Against this dubious backdrop, petitioner asks us to support a reading of the statutory language that is of potentially breath-

---

1. Petitioner does not seem to argue that the protection provided for the employees in question must necessarily be coextensive with that provided for those who were employees before the merger and have not been promoted.

The parties agree that the second sentence of § 5(2)(f) is not applicable to the employees in question, since the present impact (if any) of the merger on these employees does not occur within four years of the order approving the merger.

taking scope. Protection could extend to employees hired many years after the merger, if they were "affected" by it. Nor does the "affected" requirement provide a satisfactory limiting principle, since consolidations and other economies instituted long after the merger might well be traced back to it in some sense. The principle urged by petitioner, in short, threatens to vitiate in large measure the economies that the merger was designed to achieve. We reject it.[2]

■ Petitioner contends alternatively that the Commission has discretionary authority to afford protection to post-merger employees and to employees promoted after the merger, and that it failed adequately to explain its refusal to exercise this authority. We need not decide whether the Commission has such authority, or from which provision it derives, for it is clear that all members of the Commission are unanimous that it is not appropriate to exercise whatever discretion it may have so as to give retroactive protection to the nine employees here in question. The basis for that discretionary determination may be adequately discerned[3] in terms of the inequity of retroactive insertion of conditions not contained in either the merger agreement or the 1967 ICC order, as contrasted with a supplemental order under § 5(10) in the nature of clarification,[4] and of the threat to labor cost savings that such augmented protective conditions would pose.[5]

*Affirmed.*

---

2. We do not consider whether employees who were on board at the time of the merger might have a claim to protection even of a post-merger promotion on the ground that their status as of the merger date included a legitimate expectancy of promotion in the normal course of events meriting protection. No such contention was argued to the court.

3. *See Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945); *Greater Boston Television Corp. v. FCC*, 143 U.S.App.D.C. 383, 393, 444 F.2d 841, 851

(1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

4. In *Chesapeake and Ohio Ry. Co. et al. v. ICC*, 187 U.S.App.D.C. 241, 571 F.2d 1190 (D.C.Cir. 1977), the court found the supplemental order to be a clarification.

5. As indicated, it is unnecessary for us to decide whether such discretionary authority, if it exists, is to be found in § 5(2)(b), as the majority of the Commission believed, or in § 5(2)(f), as Commissioner O'Neal appeared to accept, in his concurrence to the order here appealed.