Leroy ADAMS, et al., Plaintiffs,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.

Civ. A. No. 93–2051–GTV.

United States District Court, D. Kansas.

Nov. 16, 1993.

Michael E. Callen, Callen, Sexton & Shelor, Kansas City, KS, Dan M. Norwood, Michelle B. Walters, The Norwood Law Firm, Memphis, TN, for plaintiffs.

Barbara A. Harmon, David J. Waxse, Shook, Hardy & Bacon, Overland Park, KS, Thomas J. Knapp, Lawrence M. Stroik, Charles Shewmake, Burlington Northern R. Co., Ft. Worth, TX, William A. Brasher, Brasher Law Firm, St. Louis, MO, for defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, brought by several employees of defendant Burlington Northern Railroad Company. The case is before the court on the following motions:

Defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 26), and

Defendant's motion to dismiss for failure to allege condition precedent under Fed. R.Civ.P. 9(c) (Doc. 27).

For the reasons set forth in this memorandum and order, both motions are denied.

### I. Background

Plaintiffs began their employment in the mid–1950's with four separate railroads. Those railroads merged in 1970 to form Burlington Northern (defendant) which contin-

ued plaintiffs' employment. Defendant abolished plaintiffs' positions in February 1991 when it decided to close its National Marketing Center. Plaintiffs allege they were "surplussed," which according to plaintiffs means that they were given jobs with less responsibility and for less pay. Meanwhile, plaintiffs contend that defendant filled jobs for which plaintiffs applied with less qualified, younger employees.

Plaintiffs, after filing their grievances with the Equal Employment Opportunity Commission (EEOC), commenced this action pursuant to ADEA, 29 U.S.C. § 621, *et seq.* Plaintiffs seek reinstatement to the National Account Manager positions they held prior to those positions being abolished, reinstatement to comparable positions, or front pay.

## II. Subject Matter Jurisdiction

Defendant contends that this case should be dismissed for lack of subject matter jurisdiction for two reasons. First, defendant argues that since this case involves a dispute regarding plaintiffs' employment status and labor conditions imposed by the Interstate Commerce Commission (ICC), the ICC has exclusive jurisdiction under the Interstate Commerce Act, 49 U.S.C. §§ 11341–11347. Secondly, defendant claims that the conditions imposed by the ICC provide for mandatory and binding arbitration of all disputes.

Some additional facts are needed in order to understand and discuss defendant's motion to dismiss for lack of subject matter jurisdiction. The following facts are derived primarily from documents submitted by defendant in connection with its motion. When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider matters outside the pleadings in making its determination. *Matthews v. United States,* 720 F.Supp. 1535, 1536 (D.Kan.1989).

In March 1970, several railroads, including the Great Northern Railway, Chicago, Burlington & Quincy Railroad, Northern Pacific Railway Company, and the Spokane, Portland & Seattle Railway Company merged to form one railroad company, Burlington Northern. This merger was approved by the Interstate Commerce Commission (ICC) pursuant to Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5 (now codified at 49 U.S.C. §§ 11341–11348). *See Great Northern Pacific & Burlington Lines, Inc. Merger,* 331 I.C.C. 228 (1967), *aff'd, United States v. United States,* 296 F.Supp. 853 (D.D.C.1968), *aff'd, United States v. Interstate Commerce Comm'n,* 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

In approving the merger, the ICC imposed certain job and benefit assurances, known as labor protective conditions, to protect the employees of the newly formed railroad. *See* 331 I.C.C. at 276–79. The ICC imposed these labor protective conditions pursuant to § 5(2)(f) of the Interstate Commerce Act, now codified at 49 U.S.C. § 11347, which allows the ICC to approve mergers only if "the employees of the affected rail carrier will not be in a worse position related to their employment as a result of the transaction." 49 U.S.C. § 11347. The ICC can impose its own protective conditions or adopt an agreement reached by the parties. In this merger, the labor protective conditions were taken from pre-merger agreements that the merging railroads had entered into with two labor unions. The ICC ordered that these conditions would apply to all employees, not only employees represented by the unions.

Under the ICC Order, "no employee is to be deprived of his employment status or placed in a worse position with respect to compensation, rules governing working conditions, fringe benefits or rights and privileges pertaining thereto at any time during such employment." 331 I.C.C. at 277–78. The employees of the merging railroads received these guarantees and job assurances "for the rest of their working lives." 331 I.C.C. at 278. Under the labor protective conditions, covered employees whose positions are eliminated are entitled to receive a "monthly allowance" based on the amount of compensation that they received immediately prior to the merger.

All of the plaintiffs were employed by predecessors of Burlington Northern as of the 1970 merger date and are therefore covered by the labor protective conditions imposed by the ICC Order. Although plaintiffs' posi-

tions were abolished and they do not presently perform any duties for Burlington Northern, plaintiffs continue to receive their monthly allowance of wages and benefits from Burlington Northern pursuant to the ICC Order.

Under the labor union agreements, adopted by the ICC as the applicable labor protective conditions for all employees, any dispute involving the "interpretation or application of any provision" of the agreements "may be referred by either party to a Disputes Committee for consideration and determination." The agreements further provide that "[t]he decision of the majority of the Disputes Committee shall be final and binding."

Defendant contends that plaintiffs' claims must be resolved by arbitration and therefore this court has no jurisdiction. The central issue before the court on defendant's motion to dismiss is whether the plaintiffs must follow the arbitration procedures contained in the labor protective conditions, even though plaintiffs claims relate to illegal age discrimination and violations of the ADEA, 29 U.S.C. § 621, *et seq.*

The Interstate Commerce Act, 49 U.S.C. § 11347 (formerly Section 5(2)(f)), expressly requires the ICC to impose appropriate conditions for the protection of railroad employees who are affected by a merger. *Brotherhood of Locomotive Engineers v. Boston & Maine Corp.*, 788 F.2d 794, 800–01 (1st Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986); *Missouri Pacific Ry. v. United Transp. Union,* 782 F.2d 107, 112 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3209, 96 L.Ed.2d 696 (1987). The ICC typically uses arbitration procedures to resolve disputes involving the labor protective conditions, and the arbitration process is mandatory. *Atkins v. Louisville & Nashville Ry.,* 819 F.2d 644, 646 (6th Cir.1987); *Walsh v. United States,* 723 F.2d 570, 572 (7th Cir.1983). When a plaintiff's claim is subject to arbitration, federal courts lack subject matter jurisdiction to entertain the action. *Atkins,* 819 F.2d at 650.

Plaintiffs do not dispute the exclusive and mandatory nature of the arbitration process, nor do they deny that they are covered by the labor protective conditions of the ICC Order. Rather, the disagreement here centers on whether the mandatory arbitration process is applicable to the type of claim that plaintiffs have brought. Plaintiffs argue that they are not seeking the protection afforded by the ICC merger order, but rather they are seeking relief under the federal age discrimination laws, and therefore the arbitration process is not mandated. Defendant characterizes plaintiffs' claims as disputes relating to the labor protective conditions which require interpretation or application of the ICC merger order, and therefore mandatory binding arbitration is the proper resolution method.

Although courts have consistently upheld the mandatory nature of the ICC arbitration procedures, in every reported case on the subject the plaintiffs' claims related directly to the ICC labor protective conditions. *See, e.g., Collins v. Burlington Northern Ry.,* 867 F.2d 542 (9th Cir.1989) (employees furloughed beginning two years after railroad merger alleging that the furloughs were due to the merger thus entitling them to benefits under the merger order); *Atkins,* 819 F.2d 644 (actions to enforce labor protective conditions and recover damages for violations of ICC merger order); *Walsh,* 723 F.2d 570 (plaintiff claiming entitlement to protective benefits after discharge); *Anderson v. United Transp. Union,* 557 F.2d 165 (8th Cir. 1977) (action against union and railroad alleging that defendants violated provisions of labor protective agreement relating to railroad merger); *Atkinson v. Union Pacific Ry.,* 628 F.Supp. 1117 (D.Kan.1985) (plaintiffs claiming benefits due under labor protective conditions resulting from their furloughs before and after railroad merger); *Bond v. Union Pacific Ry.,* 601 F.Supp. 329 (D.Neb.1984) (plaintiff claiming entitlement to salary and benefits for six years following discharge pursuant to merger order's labor protective conditions). The plaintiffs here are not contesting the application of any provision contained in the ICC merger order or the labor protective conditions. They do not claim that the loss of their jobs is prohibited under the merger order, nor do they

dispute the amount of benefits due to them pursuant to the merger order provisions.

Instead, plaintiffs' claims are based solely on alleged violations of federal age discrimination law. Even if the abolishment of plaintiffs' positions could be related to the merger (which occurred 23 years earlier), the crux of plaintiffs' claim is not that the abolishment of their positions violated the protective conditions, but rather that the railroad discriminated against them by selecting younger, less qualified employees for positions that plaintiffs subsequently sought. Defendant has not shown how this alleged action relates in any way to the protections afforded under the merger order.

The court does not agree with defendant's contention that the arbitration provisions contained in the pre-merger labor agreements and incorporated into the ICC merger order should have such an expansive reach. While the defendant claims that the merger order requires arbitration of *all* claims related to employment status, the arbitration provisions adopted by the ICC limit the situations in which binding arbitration is applicable. Those situations are described in the pre-merger agreements as "any dispute or controversy ... with respect to the provisions of the implementing agreement upon which the parties have failed to reach agreement, ... the interpretation or application of any provision of this Agreement ... or of any implementing agreement ... pertaining to the said merger or related transaction."

It is true that the labor protective conditions are broad in scope, providing protection to employees for their entire working lives. This court is not persuaded, though, that the broad scope of the labor protective conditions means that they are implicated in each and every dispute related to employment or employment conditions. Congress, in promulgating the legislation authorizing these protective conditions, "was clearly concerned with the fact that merger economies would be achieved largely at the expense of displaced labor." *American Train Dispatchers Ass'n v. Interstate Commerce Comm'n,*

578 F.2d 412, 413 (D.C.Cir.1978). Under defendant's interpretation, the terms of the protective conditions would control in deciding employment disputes totally unrelated to actions taken as a result of the merger or to interpretation of the protective conditions' terms. The court does not believe that this interpretation was ever intended, either by Congress in passing the legislation or by the parties to the agreements at the time of the merger. Therefore, the court finds that arbitration is not required for this type of dispute based on the plain language of the agreements adopted by and incorporated into the ICC merger order.

Even if the subject matter of the plaintiffs' claims were appropriate for arbitration under provisions of the ICC merger order, such arbitration would not be plaintiffs' exclusive remedy. Defendant's reliance on *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), is misplaced. In *Gilmer,* the Court held that a claim brought under the ADEA was subject to compulsory arbitration pursuant to the terms of an arbitration agreement.

The *Gilmer* decision relied on the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.,* which was enacted "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer,* 500 U.S. at ——, 111 S.Ct. at 1651. Based on this statute, the Court determined that Gilmer's statutory civil rights claim was subject to arbitration. The FAA, however, specifically excludes contracts of railroad employees from its scope.[1] Further, the arbitration provision in *Gilmer* was part of an express agreement entered into between Gilmer personally and his employer. 500 U.S. at ——, 111 S.Ct. at 1650–51. In the instant case, the arbitration provision was taken from labor union agreements and imposed on all employees as part of the ICC merger order. For these reasons, the Court's rationale in *Gilmer* does not apply to the facts of this case.

---

1. Section 1 of the FAA provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

The Supreme Court's pre-*Gilmer* line of cases provides better guidance given the facts of this case. *See McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Those cases, also not decided under the FAA, held that arbitration pursuant to collective bargaining agreements did not preclude subsequent judicial resolution of statutory claims.

In *Gardner–Denver,* the Court held that a discharged employee whose grievance had been arbitrated pursuant to an arbitration clause in a collective bargaining agreement was not foreclosed from bringing a Title VII action based on the same conduct that was the subject of the arbitration. The Court recognized the difference between an employee's contractual rights under a collective bargaining agreement and statutory Title VII rights:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual rights under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

415 U.S. at 49–50, 94 S.Ct. at 1019.

In *Gardner–Denver,* the Court gave several reasons for its finding that arbitration was an inappropriate method for resolving civil rights claims. One of those had to do with competence. Arbitrators resolve disputes according to the terms of a contract or collective bargaining agreement, not according to federal law. Their expertise is the "law of the shop, not the law of the land." 415 U.S. at 57, 94 S.Ct. at 1023.

Similarly, the Court in *McDonald* held that a civil rights action brought under 42 U.S.C. § 1983 was not precluded in federal court because of its prior submission to arbitration pursuant to a collective bargaining agreement. Following the reasoning of *Gardner–Denver,* the Court stated that "although arbitration is well suited to resolving contractual disputes, . . . it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *McDonald,* 466 U.S. at 290.

■ While the facts of this case do not involve a collective bargaining agreement, the provisions of the ICC merger order, which incorporated agreements between labor unions and management, operate similarly to a collective bargaining agreement. As discussed earlier, the arbitration provisions incorporated into the ICC merger order deal specifically with issues arising out of the negotiated agreements, including the labor protective conditions. Plaintiffs' claims in no way implicate those agreements, but rather are based solely on statutory violations. The arbitration procedure prescribed under the ICC merger order is not the plaintiffs' exclusive forum for resolving those statutory claims.

■ For the same reasons that arbitration is not the required means to resolve plaintiffs' ADEA claims, the defendant's argument that the ICC has exclusive jurisdiction under the Interstate Commerce Act must also be rejected. It is true that the ICC has the exclusive jurisdiction to approve mergers in the railroad industry and to prescribe applicable labor protective conditions. *See* 49 U.S.C. §§ 11341(a) and 11347. There is nothing in the act, however, divesting district courts of jurisdiction over disputes, such as those found in this case, that do not directly implicate those labor protective conditions.

The court finds that plaintiffs are not precluded by the arbitration provisions of the ICC merger order, nor by the ICC's jurisdiction over matters related to railroad mergers, from bringing their ADEA claims in federal court. Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### III. Allegation of Condition Precedent

■ Defendant has also moved the court to dismiss plaintiffs' amended complaint for failure to allege the performance of a condi-

tion precedent. Defendant contends that amendments to the ADEA, which were part of the Civil Rights Act of 1991, now require that the EEOC issue a right-to-sue notice to a charging party once the Commission has dismissed the complaint, and that this right-to-sue notice is a statutory prerequisite to bringing an ADEA action. Because the court finds that receipt of such notice is not a prerequisite to bringing an ADEA claim, the defendant's motion is denied.

Plaintiffs, in their amended complaint, allege that "[p]rior to the filing of the instant action, the Plaintiffs filed charges of age discrimination with the Equal Employment Opportunity Commission. See attached Exhibits A. This Complaint has been brought more than sixty days after the charge was filed." The exhibits to the complaint were discrimination charge forms presumably filed with the EEOC. The forms show that plaintiffs all filed their charges between July and September, 1991, within six months of the most recent alleged discriminatory act. Plaintiffs' amended complaint contains no allegation that plaintiffs received right-to-sue notices from the EEOC. The original complaint in this case was filed on February 5, 1993.

Fed.R.Civ.P. 9(c) provides as follows: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." While receipt of a right-to-sue notice as a prerequisite to filing an ADEA suit has not been previously addressed, a number of courts have dealt with the issue in the context of actions brought under Title VII, 42 U.S.C. § 2000e *et seq.* Some courts have held that the receipt of a right-to-sue letter is a statutory prerequisite to bringing a Title VII action and failure to allege receipt subjects the plaintiff's claim to dismissal. *See, e.g., Pinkard v. Pullman–Standard, Div. of Pullman, Inc.,* 678 F.2d 1211 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983) (right-to-sue letter as precondition to filing Title VII suit satisfied by receipt of letter while action still pending);

*Hladki v. Jeffrey's Consol., Ltd.,* 652 F.Supp. 388 (E.D.N.Y.1987) (dismissing action under Rule 9(c) for failure to plead or aver compliance with a condition precedent when plaintiff brought Title VII action before obtaining right-to-sue letter from EEOC).

Several time limits are applicable to ADEA actions. First, an individual must file his complaint with the EEOC within 180 days of the alleged unlawful discrimination. 29 U.S.C. § 626(d). However, if the alleged discriminatory act is subject to a state statute prohibiting age discrimination, then the individual must file the EEOC charge within 300 days of the alleged unlawful act or within thirty days after the receipt of notice that the state proceedings have been terminated, whichever is earlier. *Id.* In either case, an individual may not file a civil action until sixty days have elapsed after the filing of charges with the EEOC. *Id.* Therefore, as a precondition to bringing a civil action under ADEA, a plaintiff must file his administrative charges within the appropriate time limit and must then wait at least sixty days before bringing suit.

The "sixty days after charges filed" constitutes the beginning point in the window of time that a plaintiff can bring an ADEA civil action. The ADEA also defines the outer limit of that window. Prior to the Civil Rights Act of 1991 ("1991 Act"), the statute of limitations for ADEA law suits was two years or, if the age discrimination was willful, three years after the alleged discriminatory act. The prior version of 29 U.S.C. § 626(e) established this two year-three year limitations period by incorporating Section 6 of the Portal–to–Portal Act of 1947, 29 U.S.C. § 255.

The 1991 Act amended 29 U.S.C. § 626(e) by eliminating the two year-three year limitations period. Pub.L. No. 102–166, § 115, 105 Stat. 1071, 1079. At the same time, Section 115 of the 1991 Act provides that if a charge filed with the EEOC is dismissed or the EEOC proceedings are otherwise terminated, the EEOC is to notify the complainant, who may then bring a civil action within ninety days after receipt of the EEOC notice. 29 U.S.C. § 626(e). The 1991 Act did not change § 626(d), discussed above. Thus, un-

der the current law, the window for filing an ADEA suit begins sixty days after filing the EEOC charges and ends ninety days after receipt of the EEOC right-to-sue notice.

· In its motion to dismiss, defendant argues that receipt of the EEOC right-to-sue notice is a precondition to filing an ADEA suit. To support its position, defendant points to the fact that after the 1991 Act, the procedural requirements under ADEA are almost identical to those contained in Title VII, and that the court should rely on Title VII precedent to interpret the new ADEA provision. It is true that the ADEA was patterned after Title VII. *Lorillard, Div. of Loew's Theatres, Inc. v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978) (noting that prohibitions of ADEA were derived *haec verba* from Title VII). A number of courts have held that Title VII case law should be applied when interpreting ADEA provisions that are similar to Title VII. *See Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 587 (5th Cir.1981); *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1259 (10th Cir.1976), *aff'd,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir.1975).

Despite the similarities between the two statutes, however, there are some differences in their operation that are significant to this discussion. Most importantly, under the plain language of the ADEA, the claimant's independent right to sue arises automatically upon the expiration of sixty days after filing of the charge with the EEOC. 29 U.S.C. § 626(d). No similar right exists under Title VII. The wording of the Title VII provision makes it clear that an individual's right to bring suit does not arise until after the EEOC has issued a right-to-sue notice:

If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge. . . .

42 U.S.C. § 2000e–5(f)(1).

In contrast, the ADEA retains the provision in 29 U.S.C. § 626(d), discussed earlier, which allows an individual to bring suit if sixty days have elapsed since filing charges with the EEOC. That section states: "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the EEOC." Likewise, nothing in the language of the ADEA statute requires that the plaintiff receive a right-to-sue notice before filing suit. The amended section in question states:

If a charge filed with the Commission under this Chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of receipt of such notice.

29 U.S.C. § 626(e).

In addition, the changes contained in Section 115 of the 1991 Act, which included the addition of the above language to § 626(e), all deal with the limitations period. Section 115 repealed the two year statute of limitations and also deleted language in the former version of § 626(e) that tolled the statute of limitations while the EEOC was attempting to effect voluntary compliance through informal methods of conciliation. Further, Section 115 of the Act is titled, "Notice of Limitations Period under the Age Discrimination in Employment Act of 1967."

Finally, if Congress had intended that individuals should have no right to sue until after receipt of the right-to-sue notice, it would have deleted from § 626(d) the language that gives an individual the right to bring suit sixty days after charges are filed with the EEOC. Instead, it appears from the context that Congress, in making the change that requires EEOC to issue right-to-sue notices, was more concerned with assuring that claimants are properly notified of the time

limits within which a suit must be brought. In summary, there is no indication from either the language of the statute or the context in which it appears that Congress intended that the right-to-sue notice should serve as a precondition to filing suit.

This interpretation is also consistent with the legislative history of this section. On October 31, 1991, the day that the 1991 Act was passed by the Senate, a section-by-section analysis of the Act was reprinted in the Congressional Record at the request of Senator Dole, the minority leader. Senator Dole stated that the analysis represented the views of the administration, himself, and thirteen other senators from both parties. 137 Cong.Rec. S15,472–01. That material contains the following analysis of the section amending the ADEA limitations period:

> This section generally conforms procedures for filing charges under the ADEA with those used for other portions of Title VII. In particular, it provides that the EEOC shall notify individuals who have filed charges of the dismissal or completion of the Commission's proceedings with respect to those charges, and *allows those individuals to file suit from 60 days after filing the charge until the expiration of 90 days after completion of those proceedings.* This avoids the problems created by current law, which imposes a statute of limitations on the filing of suit regardless of whether the EEOC has completed its action on an individual's charge.

137 Cong.Rec. S15,477 (1991) (emphasis added). This analysis was also made a part of the record during the House of Representatives' debate and passage of the bill on November 7, 1991. *See* 137 Cong.Rec. H9,548 (1991).

This interpretation was also adopted by the court in *McConnell v. Thomson Newspapers, Inc.,* 802 F.Supp. 1484 (E.D.Tex.1992), one of the cases cited by defendant for the proposition that Section 115 of the 1991 Act applies retroactively to suits filed after the Act's effective date based on discrimination occurring prior to the effective date. That court, in deciding whether the old or new limitations period should apply, stated:

> If the new limitations computation applies, it is certain [plaintiff's] ADEA claims would be timely, because at the time he filed both his original and amended state court petitions, the EEOC had not yet notified him either of the dismissal of his charge or termination of its proceedings. The statute of limitations would not have begun to run when [plaintiff] filed his claims.

*Id.* at 1494. Thus, the court implicitly recognized that the right-to-sue notice requirement relates only to the limitations period and is not a precondition to filing an ADEA suit.

For all the above reasons, this court finds that receipt of a right-to-sue notice is not a prerequisite to filing an ADEA action. Therefore, defendant's motion to dismiss for failure to state a condition precedent is denied.

Because the parties, in arguing defendant's motion to dismiss, were working from the premise that receipt of the EEOC right-to-sue notice is a precondition to filing suit, they identified the issue to be decided as dealing with retroactivity. The ADEA amendments contained in the Civil Rights Act of 1991 were effective November 21, 1991. Thus, the alleged discriminatory acts and the filing of EEOC charges all occurred prior to the effective date of the act. This suit, however, was filed subsequent to that date. Defendant contends that the "right-to-sue notice" requirement of the amended act should apply since that provision relates to a procedural rather than substantive matter. Plaintiff argues that the pre–1991 Act provisions should apply because the alleged unlawful actions and the filing of administrative charges occurred prior to the Act's effective date.

The court has found that the requirement of filing suit within ninety days of receipt of the EEOC right-to-sue notice is a provision defining the limitations period and is not a condition precedent to filing suit. Since this issue has been raised in the context of a motion to dismiss for failing to plead a condition precedent, the court need not at this time address the question of whether the 1991 Act's provision should apply in this case. Defendant has not alleged that the suit was

filed more than ninety days after plaintiffs received right-to-sue notices. If, in fact, this suit was filed more than ninety days after receipt of the right-to-sue notices, then the issue of retroactivity may need to be addressed.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 26) is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss for failure to allege a ·condition precedent under Fed.R.Civ.P. 9(c) (Doc. 27) is also denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**