**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

J.D. ROBERTSON; J.E. WINTERS;
R.K. LUNA; W.G. WILKINS; J.
MAXWELL; T.L. PAYNE; JERRY
WILLIAMS; E.D. IRVIN; L.J.
PAYNE; G.W. BRADSHAW; W.D.
BOHANNON; LEROY GARMAN,

      Plaintiffs-Appellants,

  v.

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY, a
corporation; UNITED
TRANSPORTATION UNION
("UTU"), an unincorporated
organization,

      Defendants-Appellees.

No. 06-7058
(D.C. No. 05-CV-325-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs were trainmen for defendant Burlington Northern and Santa Fe Railway Company (BNSF)[1] who were furloughed in 1987 when BNSF sold its line in their seniority district. In 1995, BNSF and defendant United Transportation Union (UTU), executed an agreement that created a new consolidated seniority district, altering employment rights of the trainmen affected.

Ten years later, plaintiffs filed this suit alleging that (1) BNSF "breached the [1995 agreement] by failing to recall any of the furloughed plaintiffs and by failing to notify the union or the furloughed employees of employment openings"; (2) UTU "breached its duty of fair representation of union members by failing to notify the plaintiffs of the provisions of the [1995 agreement] which affected them and failing to monitor job openings at [BNSF]"; (3) "as a result of the joint silence of the defendants, the plaintiffs were wholly without knowledge of the agreement and their rights thereunder"; and (4) "had [BNSF] complied with the provisions of the agreement, all plaintiffs would have been recalled to work with much greater compensation and benefits than they were then receiving from their then current employment." Aplt. App. at 14-15.

---

[1]     More precisely, plaintiffs were employed by a predecessor of BNSF, Burlington Northern Railroad Company (BN). BN merged with the Atchison, Topeka and Santa Fe Railway in 1995 to form BNSF. For purposes of resolving the issues in this appeal, the distinction between the two companies is immaterial. In the interest of clarity and consistency, we will refer to plaintiffs' employer throughout this order and judgment as BNSF.

The district court granted defendants' motions for summary judgment, and plaintiffs now appeal. We review the district court's decision de novo. *See Hagerman v. United Transp. Union*, 281 F.3d 1189, 1194 (10th Cir. 2002). For the reasons noted below, we **AFFIRM.**

It has long been recognized that the National Railroad Adjustment Board (NRAB) has exclusive jurisdiction under the Railway Labor Act to arbitrate employment-related disputes between rail carriers and their employees. *See, e.g., Glover v. St. Louis-San Francisco Ry.*, 393 U.S. 324, 328 (1969) (applying 45 U.S.C. § 153 First (I)). It is also "beyond cavil that a suit against the [rail employees'] union for breach of its duty of fair representation is not within the [NRAB's] jurisdiction." *Czosek v. O'Mara*, 397 U.S. 25, 27-28 (1970). When interrelated claims of both types are present, they may be joined together in a single "hybrid" suit cognizable in federal court. *Hagerman*, 281 F.3d at 1194; *see Richins v. S. Pac. Co.*, 620 F.2d 761, 762-63 (10th Cir. 1980). In such a suit, given the NRAB's otherwise exclusive authority over employment disputes, "a viable duty-of-fair-representation claim against an employee's union is the jurisdictional predicate for a correlative claim against the employer." *Spaulding v. United Transp. Union*, 279 F.3d 901, 912 (10th Cir. 2002). Thus, if the claim against the union fails, the claim against the employer fails as well. *See, e.g., Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004); *Ayala v. Union De Tronquistas De Puerto Rico*, 74 F.3d 344, 346 (1st Cir. 1996).

Plaintiffs' allegations regarding the effectuation of the 1995 agreement implicate the duty of fair representation, which applies "during the negotiation, administration, and enforcement of collective-bargaining agreements." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979); *see Air Line Pilots Ass'n Intl. v. O'Neill*, 499 U.S. 65, 67 (1991) (acknowledging that duty of fair representation "applies to all union activity, including contract negotiation"). However, to establish that UTU breached that duty, plaintiffs must show that it engaged in a specific kind of misconduct. Unions breach the duty of fair representation when they act in a manner that is "arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998) (following *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). The district court correctly held that evidence of such misconduct was absent here.

Plaintiffs did not assert discrimination or bad faith on the part of UTU, nor did they assert facts reflecting such wrongful motivation. *See, e.g., Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1185-86 (10th Cir. 2001) (holding plaintiffs showed neither discrimination, which requires invidious motive, nor bad faith, which requires fraud, deceit, or dishonesty). To premise liability on "arbitrary" action, plaintiffs must point to conduct "so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67 (quotation and citation omitted); *see Marquez*, 525 U.S. at 45 (reaffirming *O'Neill* standard). Plaintiffs have not done so. Among other things, UTU has argued

-4-

persuasively that its failure to notify plaintiffs of the 1995 agreement was reasonable because that agreement did not encompass plaintiffs' seniority district. Under industry practice, it apparently would not have been reasonable for the agreement to include plaintiffs' district because it had no available work to contribute to the agreement after BNSF sold its line in 1987 (that is, the district had no jobs that out-of-district trainmen covered by the 1995 agreement could bid on).

Most significantly, negligence is a legally insufficient basis for a fair-representation claim: "mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990). Consistent with the pleadings, which sought redress for harm caused "[b]y reason of the neglect of defendants," Aplt. App. at 15, all of the plaintiffs acknowledged that their claim against UTU was based on negligence, *see id.* at 209-10, 225, 244-45, 263-64, 278, 286, 301-02, 352-53, 362, 377-78, 391, 399-400. That acknowledgment is fatal to their claim.

Plaintiffs argue in their reply brief that this court recognized a fourth, alternative basis for a fair representation claim, i.e., "perfunctory" disregard of union members' interests, *see Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239-40 (10th Cir. 1998), which they contend supports their case. However, we decline to consider this belated argument. *See Tele-Communications, Inc. v.*

-5-

*Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("[T]o preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time."*)*; *United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996) (declining to reach point first raised in reply brief).[2]  Plaintiffs will not be permitted at this late date to recast the factual premise for their claim.  Throughout this litigation, plaintiffs have complained of negligence.  And now they must abide by the consequences; negligence simply is not enough.

Because plaintiffs have failed to assert a viable fair-representation claim against UTU, their correlative contract claim against BNSF lacks its

---

[2]    It is true, as we noted in *Webb*, that the Supreme Court has referred to perfunctory conduct in connection with the duty of fair representation.  *See, e.g.*, *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 864 n.6 (1987) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)).  It is not clear, however, that the Court intended to create a wholly separate basis for union liability beyond the three grounds stated in its seminal *Vaca* decision.  *See generally Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Indeed, after *Webb*, the Court reaffirmed the *Vaca* formulation, which it specifically characterized as a "tripartite standard."  *Marquez*, 525 U.S. at 44.  Instead, in referring to perfunctory conduct, the Court appears to have been providing a particular example of conduct actionable under the tripartite standard.  *See Foust*, 442 U.S. at 47 ("[A] union breaches its duty when its conduct is 'arbitrary, discriminatory, or in bad faith,' as, for example, when it 'arbitrarily ignore[s] a meritorious grievance or process[es] it in [a] perfunctory fashion.'" (quoting *Vaca,* 386 U.S. at 190-91)); *Webb*, 155 F.3d at 1240 (noting that "it is easy to read" the Court's references to perfunctory conduct "as merely expressing a concrete example of the kind of specific conduct prohibited by the tripartite standard"); *see also Schwartz,* 264 F.3d at 1185 (reading *Webb* as concluding that perfunctory conduct "may be actionable in certain contexts or as a specific type of arbitrary conduct").  In any event, we need not determine here the precise role perfunctory conduct plays in the law governing fair representation claims.

"jurisdictional predicate." *Spaulding*, 279 F.3d at 912.  Accordingly, the district court correctly rejected it.

The judgment of the district court is **AFFIRMED**.


Entered for the Court


Jerome A. Holmes
Circuit Judge